# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| LINA SALEK, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:18-cv-1664 |
| | § | |
| SUNTRUST MORTGAGE, INC., | § | |
|     Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court in this homeowner dispute is Defendant SunTrust Mortgage, Inc.'s Motion to Dismiss and Brief in Support (the "Motion") [Doc. # 6]. Defendant moves to Dismiss Plaintiff Lina Salek's Complaint [Doc. #1] in its entirety on the grounds that she has failed to allege a plausible claim for relief regarding each of her four asserted causes of action. Plaintiff filed a timely response to the Motion, to which Defendant replied.[1] The Motion is now ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all pertinent matters of record, the Court **grants in part** and **denies in part** the Motion.

---

[1]     *See* Plaintiff's Response to Defendant's Motion to Dismiss (the "Response") [Doc. # 9]; Defendant's Reply in Support of the Motion (the "Reply") [Doc. # 11].

# I.  BACKGROUND

On September 1, 2010, Plaintiff and Defendant executed a Deed of Trust[2] in connection with Plaintiff's purchase of real property in Harris County, Texas (the "Property").  The Deed of Trust obligates Plaintiff to insure the Property against certain losses, including those resulting from flooding.  Under the Deed of Trust, in the event of damage to the Property, "any insurance proceeds, whether or not the underlying insurance was required by [Defendant], shall be applied to restoration or repair of the Property."  The Deed of Trust also specifies that, "[d]uring such repair and restoration period, [Defendant] shall have the right to hold such insurance proceeds until [Defendant] has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly."  While in possession of the insurance proceeds, Defendant "may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is

---

[2]  Although Plaintiff did not attach a copy of the Deed of Trust to her Complaint, that agreement nevertheless is properly before the Court at this time because Defendant attached the Deed of Trust to its Motion and the Deed of Trust is referred to in Plaintiff's Complaint and is central to her claims in this litigation. *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766–67 (5th Cir. 2016) ("A district court is limited to considering the contents of the pleadings and the attachments thereto when deciding a motion to dismiss under Rule 12(b)(6). . . . The court may, however, also consider '[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim.'") (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000)).

completed." Finally, Defendant is not required to pay Plaintiff any interest or earnings on insurance proceeds in its possession "[u]nless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds."

In August 2017, the Property, like many other homes and businesses in the Houston, Texas area, was damaged by Hurricane Harvey. As a result, Plaintiff's insurer paid Plaintiff and Defendant over $129,000 in insurance proceeds, which, pursuant to the terms of the Deed of Trust, Defendant held on Plaintiff's behalf while the Property was being repaired. Plaintiff alleges that her efforts to repair the Property were inhibited by Defendant's "unusually burdensome" requirements, including that each contractor Plaintiff wished to use to repair the Property provide a copy of their license, W-9 forms, and sign a waiver of lien with respect to the Property. Plaintiff also alleges that Defendant has not disbursed insurance funds to her in a timely manner, which has made it difficult for her to secure contractors and also has forced her used proceeds from the sale of her other assets to fund the repair and restoration of the Property, instead of being able to invest those funds.

According to Plaintiff, during her communications with Defendant, Defendant told her that the insurance proceeds would be disbursed to her in accordance with the percentage of repairs completed on the Property, as determined by Defendant's inspectors. On March 2, 2018, Defendant inspected the Property for the first time and found that 50% of the necessary work had been

3

completed.  On March 15, 2018, Defendant released $56,861 of the insurance proceeds to Plaintiff.  Defendant inspected the Property again on March 19, 2018, and for a third time on March 27, 2018, and found that 92% and 95% of the work had been completed, respectively.  Between at least March 15, 2018 and May 22, 2018, the date of the Complaint, Defendant made no further insurance proceeds disbursements to Plaintiff and retained $56,861.23 of such funds.

As a result of Defendant's allegedly unreasonable conduct, Plaintiff filed the instant lawsuit asserting four claims against Defendant in her Complaint: breach of contract (Count One), breach of fiduciary duty (Count Two), violation of the Texas Deceptive Trade Practices Act (the "DTPA")[3] (Count Three), and unjust enrichment (Count Four).  By the Motion, Defendant seeks dismissal of each count of the Complaint on the grounds that Plaintiff has failed to properly allege a claim upon which relief can be granted.  The Court addresses Plaintiff's claims in turn.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).  The complaint must be liberally construed in

---

[3]    TEX. BUS. & COM. CODE § 17.41, *et seq.*

favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

## III.   DISCUSSION

### A.   Breach Of Contract

In Count One of her Complaint, Plaintiff alleges that Defendant breached the terms of the Deed of Trust by failing to timely disburse the insurance proceeds to her despite her diligent compliance with her obligations thereunder regarding repair of the Property. Defendant responds that Plaintiff does not identify in her Complaint any instance in which Defendant actually failed to adhere to the terms of the Deed of Trust, and that the gravamen of Plaintiff's claim is that she takes issue with Defendant's decision to exercise the rights and discretion it is afforded

vis à vis the insurance proceeds under that agreement. Defendant's argument in this regard is persuasive in part, and lacks merit in part.

"The elements of a breach of contract action under Texas law are: '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Smith Int'l., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)). By the Motion, Defendant challenges only the sufficiency of the allegations in the Complaint with respect to the third element, *i.e.*, that Defendant breached the Deed of Trust.

Section 5 of the Deed of Trust provides in relevant part that insurance proceeds, such as the proceeds in issue in this case, are to be "applied to restoration or repair of the Property." Section 5 also states that during the period the Property is being repaired, Defendant "shall have the right to hold such insurance proceeds until [Defendant] has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly." Nowhere in her Complaint does Plaintiff allege that Defendant ever failed to promptly undertake an inspection of the Property. Absent such an allegation, to the extent Plaintiff claims Defendant breached the Deed of Trust by failing to disburse the insurance proceeds at any time prior to

6

Defendant's first inspection of the Property on March 2, 2018, such claims fail because Defendant has a clear right under the Deed of Trust to withhold disbursement of insurance proceeds until it has the opportunity to inspect the Property. Accordingly, the Motion is **granted** with respect to such claims.

However, the allegations in Plaintiff's Complaint pertaining to her breach of contract claim are not limited to Defendant's pre-inspection conduct. Plaintiff also alleges that despite Defendant inspecting the Property three times, the last of which showed that "95% of the work [on the Property] had been completed," Defendant refused to disburse any portion of the $56,861 of insurance proceeds still in its possession.[4] Plaintiff alleges further that Defendant's agents told her both "that her insurance proceeds would be disbursed in accordance with the percentage of repairs completed, as reflected by the Inspection Forms filled out by the SunTrust inspectors,"[5] and that "all remaining funds would be released once SunTrust

---

[4]     In that regard, Defendant's assertion in the Motion that "at no time does Plaintiff allege that SunTrust outright refused to disburse a payment," Motion [Doc. # 6], p.6, is plainly incorrect. *See* Complaint [Doc. # 1], ¶ 23 ("To this day, despite multiple promises to disburse withheld funds, SunTrust continues to hold $56,861.23 of the insurance proceeds, even though Ms. Salek diligently performed her end of the contract."); *id.*, ¶ 36 ("Despite this promise and two subsequent inspector's reports showing 92% and 95% completion, Defendant still holds Plaintiff's insurance proceeds.").

[5]     Complaint [Doc. # 1], ¶ 22.

received a report from the inspector that repairs were at least 90% completed."[6]

Considered collectively, Plaintiff's allegations support a plausible inference that Defendant's method for determining whether work has been completed to its "satisfaction" was the completion percentage its inspectors assigned to the Property, that Plaintiff had completed over 95% of the repairs to the Property to Defendant's satisfaction, and that despite inspecting the Property and determining

---

[6]    *Id.*, ¶ 25. Plaintiff appears to assert a distinct claim for breach of contract against Defendant based on its failure to abide by "its oral commitment to release funds after 90% of repairs were completed." *Id.,* ¶ 28. *See also id.,* ¶ 36 ("Additionally, Defendant, through its agents and representatives, supplemented the terms agreed to in the Deed of Trust by orally promising Plaintiff on March 19, 2018 that all proceeds would be released once Defendant received the inspector's report because over 90% of the repairs had been completed."). The Court concludes that such "oral commitments," which were made well after the Deed of Trust was signed by the parties, plausibly constitutes evidence of how Defendant determined whether work on the Property was completed to its "satisfaction," and that such evidence is not foreclosed by the parol evidence rule. *See First Bank v. Brumitt*, 519 S.W.3d 95, 109 (Tex. 2017) (quoting *Hous. Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011)) ("When parties 'have a valid, integrated written agreement,' the parol-evidence rule 'precludes enforcement of *prior or contemporaneous agreements*.'") (emphasis added).

Any claims, however, that Defendant's oral statements to Plaintiff "supplemented" or otherwise modified the terms of the Deed of Trust are barred by the statute of frauds. There can be no doubt that the Deed of Trust, which relates to a real estate loan in excess of $927,000, is subject to the statute of frauds. TEX. BUS. & COM. CODE ANN. § 26.02(2)(b). Under Texas law, "[w]hen a modification relates to a matter that must be in writing, the modification must also be in writing." *Nguyen v. Fed. Nat. Mortg. Ass'n*, 958 F. Supp. 2d 781, 791 (S.D. Tex. 2013) (Rosenthal, J.); *see also Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) ("An agreement regarding the transfer of the property or modification of a loan must therefore be in writing to be valid."). Accordingly, the Motion is **granted** regarding Plaintiff's breach of contract claims based on Defendant's alleged oral supplementation or modification of the Deed of Trust.

P:\ORDERS\11-2018\1664MDismiss.docx  180808.1319

that over 95% of repairs were completed to its satisfaction, Defendant has nevertheless refused to disburse to Plaintiff any portion of the $56,861 of insurance proceeds remaining in its possession. Thus, Plaintiff has stated a plausible claim that Defendant retained the insurance proceeds in breach of its obligation under the Deed of Trust to disburse those funds upon completion of work on the Property to its satisfaction. The Motion is therefore **denied** with respect to Plaintiff's breach of contract claim based on Defendant's conduct following its inspections of the Property.

### B. Breach of Fiduciary Duty

In Count Two of the Complaint, Plaintiff claims that Defendant owed her fiduciary duties, and breached those duties by placing its own interests ahead of hers by unreasonably delaying disbursement of the insurance funds so that it could collect interest on those funds for a longer period of time. Under Texas law, the elements of a breach-of-fiduciary-duty claim are: (1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant." *Neese v. Lyon*, 479 S.W.3d 368, 386 (Tex. App.—Dallas 2015, no pet.). Defendant has moved to dismiss Count Two of Plaintiff's Complaint on the grounds that Plaintiff has failed to allege adequately the existence of a fiduciary relationship between Plaintiff and Defendant. Plaintiff

responds that a fiduciary relationship exists between her and Defendant either because she and Plaintiff had a "special relationship" under Texas law or Defendant acted as an escrow agent with respect to the insurance proceeds. The Court is unpersuaded by either of these arguments.

### 1. Special Relationship

Plaintiff first argues that because "trust was necessary to accomplish the goals of the Deed of Trust," and because Defendant held "an imbalance of bargaining power" over Plaintiff because of the significant damage to her home following Hurricane Harvey, a "special relationship" was formed pursuant to which Defendant owed Plaintiff fiduciary duties. As an initial matter, this assertion appears to be an inappropriate attempt by Plaintiff to supplement the allegations in her Complaint via her Response. As alleged in the Complaint, the source of Defendant's purported fiduciary duties to Plaintiff is Defendant's putative status as an escrow agent.[7] Nowhere in her Complaint does Plaintiff allege the existence of a separate special relationship with Defendant, which failure itself supports dismissal of this claim. However, assuming *arguendo* that Plaintiff

---

[7] *See* Complaint [Doc. # 1], ¶ 29 ("SunTrust is acting as an escrow agent for Ms. Salek, and, as her escrow agent, owes Ms. Salek a fiduciary duty); *id.*, ¶ 40 ("Defendant held all insurance proceeds for Plaintiff in escrow. Escrow agents owe their beneficiaries a fiduciary duty.").

pleaded the existence of a special relationship between her and Defendant, her claim also fails on the merits.

Under Texas law, "the mere fact that one subjectively trusts another does not, alone, indicate that he placed confidence in another in the sense demanded by fiduciary relationships because something apart from the transaction between the parties is required." *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 544 (S.D. Tex. 2011) (Ellison, J.) (quoting *American Medical Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 339 (Tex. App.—Houston 1991, no pet.). As applied to the lender-borrower context, the "relationship between a borrower and lender is usually neither a fiduciary relationship nor a special relationship. *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no writ).[8] "There is a seldom-used exception to this rule: when a special relationship

---

[8]     To the extent Plaintiff contends that Defendant owed it "informal fiduciary duties," that argument also fails. Texas law recognizes "an informal fiduciary duty that arises from 'a moral, social, domestic or purely personal relationship of trust and confidence.'" *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005) (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)). In relation to a business transaction, such as the real estate loan underlying this dispute, "the special relationship of trust and confidence must exist *prior to, and apart from*, the agreement made the basis of the suit." *Associated Indem. Corp.*, 964 S.W.2d at 288 (emphasis added). The basis of Plaintiff's lawsuit is the Deed of Trust, and the parties' respective rights and obligations thereunder. Plaintiff does not allege the existence of any relationship whatsoever between herself and Defendant that predates the Deed of Trust. Consequently, Plaintiff's Complaint fails to allege adequately that there was a "special relationship of trust and confidence" between Plaintiff and Defendant pursuant to which Defendant owed Plaintiff any fiduciary duties.

11

between a borrower and lender has been found, it has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities." *Mattar v. BBVA Compass Bank*, 2018 WL 2440382, at \*7 (Tex. App.—Corpus Christi May 31, 2018, no pet.); *Davis v. West*, 317 S.W.3d 301, 312 (Tex. App.—Houston [1st Dist.] 2009, no pet.).[9] However, a lender's conduct that is "merely consistent with protecting [its] interest in the property securing the loan," does not constitute the "extraordinary circumstance" of excessive control justifying the imposition of a special relationship.[10]

Here, Plaintiff alleges that Defendant exercised control over Plaintiff and the construction process on the Property by requiring Plaintiff to: (1) collect W-9 Forms for all contractors; (2) have all contractors to sign a waiver of lien; and (3) secure copies of all contractors' licenses. However, Plaintiff fails to articulate how any of these requirements, considered individually or collectively, is inconsistent with Defendant merely protecting its interest in the Property. Nor does Plaintiff

---

[9] *See also K3C Inc. v. Bank of Am., N.A.*, 204 F. App'x 455, 461 (5th Cir. 2006) ("Texas courts have been reluctant to find a special relationship in [the lender-borrower] context.").

[10] *Falcon Int'l Bank v. Cantu*, 2015 WL 1743396 at \*12 (Tex. App.—Corpus Christi May 12, 2015, no pet.). *See also Valdes v. Leisure Res. Grp., Inc.*, 810 F.2d 1345, 1355 (5th Cir. 1987) (analyzing whether there was sufficient control to consider lender and borrower alter egos and observing that "the ability of a lender to monitor a debtor's expenditures pursuant to a loan agreement represents a veto power which is negative in nature" and generally "does not amount to domination or control.").

cite any authority for the proposition that such requirements represent an atypical arrangement plausibly demonstrating "excessive control" by Defendant. Indeed, courts have found that comparable degrees of involvement by lenders in their borrowers' construction projects fall short of the seldom-used "excessive control" threshold.[11] Plaintiff has not alleged facts sufficient to plausibly suggest that Plaintiff's arm's-length, commercial relationship with Defendant, which consisted entirely of the Deed of Trust and transactions contemplated thereby, was a "special relationship" that imposed any fiduciary duties on Defendant. Accordingly, the Motion is **granted** on Plaintiff's breach of fiduciary duty claim stemming from the alleged existence of a "special relationship' between Plaintiff and Defendant.

---

[11] *See Falcon Int'l Bank*, 2015 WL 1743396, at *12 (concluding bank did not exercise excessive control when bank's vice president "directed how the improvement money was to be spent and was often physically present at the apartments supervising and directing improvements."); *Sigmon v. Branch Banking & Tr. Co.*, 2016 WL 8259060, at *4 n.5 (W.D. Tex. Jan. 22, 2016), *report and recommendation approved*, 2016 WL 8285748 (W.D. Tex. Mar. 1, 2016) ("In their Response, the [plaintiffs] add that, pursuant to the agreement, [the bank] controlled the inspector and that this sole discretion to determine whether [the contractor] . . . had met the construction requirements to receive a disbursement amounts to excessive control to establish a fiduciary relationship. . . Even were the undersigned to consider this new fact in its fiduciary duty assessment, however, it does not amount to an extraordinary circumstance[ ] necessary to create a fiduciary relationship between the [plaintiffs] and [the bank].") (internal quotation marks omitted).

## 2.  Escrow Agent

Plaintiff also argues, and specifically pleads in her Complaint, that Defendant owed her fiduciary duties in connection with the disbursement of the insurance proceeds because Defendant held those proceeds "in escrow" for Plaintiff and acted as Plaintiff's "escrow agent" with respect to those funds.  In the mortgagor-mortgagee context, the mere placement of funds into an "escrow account" does not create a fiduciary or trust relationship.  "[T]he courts of Texas have left no doubt that the mere '[p]ayment of funds by the mortgagor into an escrow account for the mortgagee's use to meet tax and insurance obligations on the property as they accrue does not create a trust or fiduciary relationship under Texas law.'"[12]  In this case, Defendant is alleged to have paid insurance funds into an escrow account for Plaintiff's use to meet her repair obligations on the Property as those repairs were completed.  On its face, Plaintiff's "escrow agent" fiduciary duty claim here appears substantively identical to the argument that lenders become fiduciaries when they fund escrow accounts for the benefit of borrowers

---

[12]  *Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 318–19 (5th Cir. 2005) (quoting *White v. Mellon Mortg. Co.,* 995 S.W.2d 795, 801 (Tex. App.1999)); *Wesson v. Jefferson Sav. & Loan Ass'n*, 641 S.W.2d 903, 905 n.2 (Tex. 1982). *See also Garcia v. Bank of Am. Corp.*, 375 S.W.3d 322, 333 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Other cases have explained that when the escrow agreement simply provides for the payment of funds by the mortgagor into an account for the mortgagee's use to meet tax, insurance, and other obligations . . . no fiduciary relationship is created.").

P:\ORDERS\11-2018\1664MDismiss.docx  180808.1319

with advanced property insurance and tax payments, an argument that has been squarely rejected by Texas courts. Plaintiff cites no contrary authority, and indeed, does not cite any case in which a lender was found to have assumed fiduciary duties to a borrower, or even plausibly alleged to have done so, under facts comparable to those alleged in her Complaint. Based on the general principle of Texas law that the relationship between a borrower and lender is not fiduciary in nature, and based on Texas authority finding that no fiduciary relationship is created in the analogous context in which a lender holds a borrower's pre-paid property tax and insurance funds in escrow,[13] the Court concludes that Plaintiff has failed to allege facts creating a plausible claim that Defendant owed Plaintiff a fiduciary duty by virtue of the former holding insurance proceeds for Plaintiff's benefit in an escrow account.[14] The Motion is therefore **granted** on this theory of Plaintiff's breach of fiduciary duty claim.

### C. DTPA and the Economic Loss Rule

In Count Three of the Complaint, Plaintiff alleges that Defendant violated Section 17.50(a)(3) of the DTPA, which entitles a consumer to assert claims

---

[13]  *Monumental Life Ins. Co.*, 403 F.3d at 318–19 (quoting *White,* 995 S.W.2d at 801); *Wesson v*, 641 S.W.2d at 905 n.2. *See also Garcia*, 375 S.W.3d at 333.

[14]  *See also Flagstar Bank, FSB v. Walker*, 451 S.W.3d 490, 503–04 (Tex. App.— Dallas 2014, no pet.) ("Courts do not create fiduciary relationships lightly.") (citing *Env't'l Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 628 (Tex. App.— Houston [14th Dist.] 2009, pet. denied)).

15

against a person who commits an "unconscionable action or course of action" that causes economic damages or damages for mental anguish. TEX. BUS. & COM. CODE ANN. § 17.50(a)(3).[15] Specifically, Plaintiff alleges that Defendant acted unconscionably with respect to the insurance proceeds because "Defendant took advantage of its position by requiring Plaintiff to perform a series of unreasonably burdensome tasks while Plaintiff labored to recover from the devastation of Hurricane Harvey," and "Defendant further delayed the release of funds in breach of its own promises and without explanation to Plaintiff."[16] Defendant argues that Plaintiff's DTPA claim functionally reasserts her breach of contract claim and is barred by the "economic loss rule." The Court agrees.

"The Texas Supreme Court has extended the principles underlying the economic loss rule to DTPA claims under the 'mere breach of contract' defense." *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 469 (N.D. Tex. 2015). Under Texas law, "[a]n allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016)

---

[15]    The DPTA defines "unconscionable action or course of action" as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE ANN. § 17.45(5).

[16]    Complaint [Doc. # 1], ¶ 45.

(quoting *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex.1983)). "[A]s with the economic loss rule, the inquiry is whether the alleged unconscionable conduct 'could have resulted in the absence of a contract between the parties.'" *Id.* (quoting *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996) (per curiam)).[17]

Plaintiff asserts that Texas courts find DTPA unconscionability claims beyond the scope of the economic loss rule. However, Plaintiff's cited authority does not stand for such a broad proposition. Plaintiff contends that, in *Sharyland Water Supply Corp. v. City of Alton*,[18] the Texas Supreme Court "specifically cited unconscionability claims as exempt" from the economic loss rule.[19] This materially overstates the Texas Supreme Court's *Sharyland* decision. In *Sharyland*, while discussing the contours of the economic loss rule, the Texas

---

[17]    *See also Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) ("Thus, a party states a tort claim when the duty allegedly breached *is independent of the contractual undertaking* and the harm suffered is not merely the economic loss of a contractual benefit.") (emphasis added); *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 474–75 (5th Cir. 2015) ("Breach of 'an independent legal duty, separate from the existence of the contract itself,' represents a particular situation where tort claims (based on that independent duty) may co-exist with contract claims (based on a breach of the contract)") (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998)).

[18]    354 S.W.3d 407 (Tex. 2011).

[19]    Response [Doc. # 9], p. 7.

P:\ORDERS\11-2018\1664MDismiss.docx  180808.1319

Supreme Court noted "courts have allowed recovery of economic damages even absent physical injury or property damage," including for "some statutory causes of action."[20] One statutory cause of action the Texas Supreme Court specifically identified was DTPA Section 17.50.[21] But DTPA Section 17.50, which includes claims for the use of a false, misleading, or deceptive act and claims for breach of an express or implied warranty, is far broader in scope than claims for unconscionability, and the Texas Supreme Court made no mention at all of unconscionability in *Sharyland*. More fundamentally, however, is the fact that the Texas Supreme Court merely cited DTPA Section 17.50 as an example of a statutory claim that, under appropriate circumstances, is not necessarily barred by the economic loss rule.[22] It did not hold that claims under DTPA Section 17.50 always are beyond the economic loss rule's purview, and Plaintiff cites no authority interpreting *Sharyland* in such an overbroad manner.[23] Nor does Plaintiff

---

[20]   *Sharyland*, 354 S.W.3d at 418.

[21]   *Id.*, n.24.

[22]   *See, e.g., Shellnut v. Wells Fargo Bank, N.A.,* 2017 WL 1538166, at *11 (Tex. App.—Fort Worth Apr. 27, 2017, no pet. h.) ("The Texas Supreme Court has clarified that the economic-loss rule does not necessarily apply to bar certain statutory causes of action that allow recovery of economic losses even when a contract exists between the parties.") (citing *Sharyland*, 354 S.W.3d at 418).

[23]   The only other case Plaintiff cites, *SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534 (Tex. App.—Eastland 2012), does not, as Plaintiff contends, "explain[] that unconscionability claims are not barred by the economic loss rule." Response
(continued…)

cite any authority to support her implied argument that *Sharyland* overruled or otherwise limited the "the mere breach of contract defense."

Turning to the merits of Plaintiff's DTPA claim, in her Complaint, Plaintiff alleges that Defendant violated the DTPA by taking "advantage of its position by requiring Plaintiff to perform a series of unreasonably burdensome tasks while Plaintiff labored to recover from the devastation of Hurricane Harvey," and by further delaying "the release of funds in breach of its own promises and without explanation to Plaintiff." In this case, what, if any, "tasks" Defendant may impose on Plaintiff before she can receive a disbursement of the insurance proceeds and when Defendant is required to release those funds to her are matters governed by contract, namely the Deed of Trust. Plaintiff does not identify any duty independent of the Deed of Trust that obligated it to provide Plaintiff with funds to repair the Property or that Defendant allegedly violated by unreasonably

---

(continued…)
[Doc. # 9], p. 7. Indeed, the court in *Searcy* recognized the crucial issue is whether the duty in issue "lies outside the contract," and concluded that the unconscionability claims in that case were not foreclosed by the economic loss rule because "*under the facts of this case*, [the duties in issue] arose outside the contract that SCS and Spoon had with Searcy; they arose statutorily under the DTPA and were not later subsumed in the contract." *Searcy*, 390 S.W.3d at 542 (emphasis added). As discussed *infra*, unlike the plaintiff in *Searcy*, who had asserted actionable conduct outside of the relevant contract by alleging that the defendant made misrepresentations that induced the plaintiff to enter that agreement, Plaintiff here has failed to allege Defendant breached a duty to her that "arouse outside of" the Deed of Trust.

withholding disbursement of the insurance proceeds.[24]    Absent any such independent legal duty, Plaintiff's DTPA claim rests on the untenable premise that Defendant's alleged breach of the Deed of Trust also constitutes an unconscionable act within the meaning of the DTPA. Under Texas law, such claims may be asserted in contract only, and not in tort under the DTPA.    Accordingly, the Motion is **granted** with respect to Count Three of Plaintiff's Complaint.

### D.    Unjust enrichment

Finally, in Count Four of her Complaint, Plaintiff asserts a claim for unjust enrichment.   This claim is predicated on Defendant's alleged profiting from "unreasonably withholding" the insurance proceeds in issue and accumulating interest thereon.[25]   However, Defendant's right to hold the insurance proceeds, Defendant's obligations with respect to disbursing the proceeds, and Plaintiff's right to receive interest on the insurance proceeds held by Defendant, are matters directly addressed by the Deed of Trust.[26]  Under Texas law, "[g]enerally speaking,

---

[24]    Plaintiff also fails to allege any non-economic loss resulting from Defendant's alleged breach of the Deed of Trust or violation of the DTPA. *See Chapman,* 445 S.W.3d at 718 ("The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy.").

[25]    Complaint [Doc. # 1], ¶ 48.

[26]    Deed of Trust [Doc. # 6-1], ¶ 5 at ECF 8.  There is no dispute that the Deed of Trust is a valid, binding agreement between Plaintiff and Defendant.

when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).[27]  Because there is an express contract, *i.e.*, the Deed of Trust, which covers the subject matter of Plaintiff's unjust enrichment claim, such an equitable, quasi-contractual claim fails as a matter of Texas law.  Therefore, the Motion is **granted** on Count Four of the Complaint.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant SunTrust Mortgage, Inc.'s Motion to Dismiss and Brief in Support [Doc. # 6] is **GRANTED** with respect to Count Two (breach of fiduciary duty), Count Three (violation of the DPTA), and Count Four (unjust enrichment) of Plaintiff's Complaint.  Amendment of these claims would be futile, and consequently, they are **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED** that Defendant SunTrust Mortgage, Inc.'s Motion to Dismiss and Brief in Support [Doc. # 6] is **GRANTED** with respect to Count One (breach of contract) of Plaintiff's Complaint to the extent such claim alleges Defendant

---

[27]  *See also Moran v. Williamson*, 498 S.W.3d 85, 97 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("However, when an express contract covers the subject matter of the dispute, generally there can be no recovery under a quasi-contract theory such as unjust enrichment.").

breached the Deed of Trust prior to March 2, 2018.  Such claim is **DISMISSED WITHOUT PREJUDICE**.  In all other respects, Defendant SunTrust Mortgage, Inc.'s Motion is **DENIED**.  It is further

**ORDERED** that Plaintiff may file an amended complaint to address the issues raised in Defendants' motions and for any other purpose on or before **September 7, 2018**.  It is further

**ORDERED** that the initial pretrial conference in this case, currently scheduled for September 17, 2018, is continued until **October 9, 2018, at 3:00 p.m**.

SIGNED at Houston, Texas, this 8th day of **August, 2018**.


_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

P:\ORDERS\11-2018\1664MDismiss.docx  180808.1319