# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| LINA SALEK, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:18-01664 |
| | § | |
| SUNTRUST MORTGAGE, INC., | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

Before the Court in this breach of contract lawsuit is Defendant's Motion for Summary Judgment ("Motion") [Doc. # 35]. Plaintiff filed a response,[1] and Defendant replied.[2] The Motion is ripe for decision. Based on the parties' briefing, pertinent matters of record, and relevant legal authority, the Court **grants** Defendant's Motion and **dismisses** Plaintiff's claims **with prejudice**.

## I. BACKGROUND

This is a dispute between Plaintiff Lina Salek and her mortgagee, Defendant SunTrust Mortgage, Inc., ("SunTrust"), over SunTrust's allegedly delayed disbursement of insurance proceeds for damage Salek's house sustained during

---

[1] Plaintiff's Response and Brief in Opposition to Defendant's Motion for Summary Judgment ("Response") [Doc. # 37].

[2] Defendant's Reply in Support of Motion for Summary Judgment ("Reply") [Doc. # 38].

Hurricane Harvey. Plaintiff Salek and Ata Tom Salek, Plaintiff Salek's husband and a non-party to this lawsuit, purchased a house located in Houston, Texas, in September 2010. To fund their purchase, Salek and her husband executed a Promissory Note and Deed of Trust with Defendant SunTrust.[3]

Under the Deed of Trust, Salek was required to maintain hazard and flood insurance for the house and use any insurance proceeds to restore or repair the property.[4] Paragraph 5 of the Deed of Trust provides in relevant part:

> During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.[5]

Paragraph 7 provides in relevant part:

> If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.[6]

---

[3] Note [Doc. # 37-4]; Deed of Trust [Doc. # 35-1].

[4] Deed of Trust ¶ 5.

[5] *Id.*

[6] *Id.* ¶ 7.

After Salek's house was damaged by Hurricane Harvey, Salek made a claim with her flood insurer.[7] Salek received a $90,667.65 flood insurance payment on November 1, 2017, which she endorsed and sent to SunTrust.[8] In total, the Saleks received and forwarded to SunTrust $129,122.47 in insurance payments.[9]

On November 3, 2017, SunTrust sent Salek an "Insurance Claims Package," listing the steps required for SunTrust to disburse the insurance proceeds.[10] SunTrust requested Salek provide the insurance company adjuster's worksheet, a signed contract or proposal with a contractor, a contractor's waiver of lien, the contractor's W-9, and a copy of the contractor's license.[11] SunTrust further stated that after receipt of these documents, if Salek's loan was current, her "initial check amount will be up to the greater of $40,000 or 10% of the unpaid principal balance."[12] Upon demonstrating that at least 50% of the repairs were completed, the Package states the "second check will equal 50% of the remaining claim

---

[7] Plaintiff's Responses to Defendant's First Set of Interrogatories and Requests for Production ("Plaintiff's Responses") [Doc. # 35-6], Response to Interrogatory No. 2.

[8] SunTrust Payment Screens [Doc. # 37-9], at SUNTRUST 000895 (ECF 11).

[9] Plaintiff's Responses, Response to Interrogatory No. 4.

[10] Insurance Claims Package [Doc. # 35-2], at SUNTRUST 000563 (ECF 5).

[11] *Id.* at SUNTRUST 000563-64 (ECF 5-6).

[12] *Id.* at SUNTRUST 000565 (ECF 7).

funds."[13] In order to receive the remaining proceeds, the Package states that Salek must send all outstanding documentation and SunTrust would conduct an inspection to confirm "all repairs" were complete.[14]

On November 28, 2017, SunTrust released $15,400.00 of the received insurance proceeds to Salek.[15] On March 2, 2018, SunTrust conducted its initial inspection of Salek's house, which indicated that 50% of the necessary repairs were completed.[16] On March 15, 2018, SunTrust disbursed an additional $56,861.24 to Salek..[17] This $56,861.24 constituted 50% of the undisbursed $113,722.47 in proceeds.[18]

A second and third inspection on March 14 and 27, 2018, respectively revealed that 92% and 95% of the repairs were completed.[19] SunTrust did not

---

[13] *Id.*

[14] *Id.*

[15] SunTrust Letter dated November 28, 2017, re: Insurance Claim [Doc. # 35-2], at SUNTRUST 000570 (ECF 10).

[16] Inspection Form dated March 2, 2018 [Doc. # 35-3].

[17] SunTrust Letter dated March 15, 2018, re: Insurance Claim [Doc. # 35-5], at SUNTRUST 000573 (ECF 15).

[18] Plaintiff's Responses, Response to Interrogatory No. 4; Oral Deposition of Lina Salek ("Salek's Deposition") [Doc. # 35-11], at 37:8-11.

[19] Inspection Form dated March 14, 2018 [Doc. # 35-4]; Inspection Form dated March 27, 2018 [Doc. # 35-5].

4

release additional funds to Salek after either of these inspections. On May 18, 2018, SunTrust concluded the repairs were 100% complete.[20]

On May 22, 2018, Salek filed this lawsuit, alleging had SunTrust had failed to timely disburse her insurance proceeds, and asserting claims for breach of the Deed of Trust, breach of fiduciary duty, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and unjust enrichment.[21] On May 25, 2018, Salek paid off her outstanding loan in full, using, in part, the remaining insurance funds held by SunTrust in Salek's restricted escrow account.[22]

On August 8, 2018, the Court granted in part SunTrust's motion to dismiss Salek's claims, dismissing her fiduciary duty, DTPA, and unjust enrichment causes of action.[23] The Court also dismissed Salek's contract claims stemming from SunTrust's actions occurring before the first property inspection on March 2, 2018, and Salek's contract claim based on SunTrust's alleged failure to abide by oral commitments to release the funds after 90% of the repairs were completed.[24]

---

[20] Excerpts from Account Notes [Doc. # 35-2], at SUNTRUST 000479 (ECF 20).

[21] Plaintiff's Original Complaint [Doc. # 1].

[22] Disbursement Check Voucher [Doc. # 37-8], at SUNTRUST 000229 (ECF 1).

[23] Memorandum and Order dated August 8, 2018 [Doc. # 12], at 21.

[24] *Id.* at 6-8 & n.6.

On September 7, 2018, Salek filed an amended complaint, asserting claims for breach of the Deed of Trust and conversion.[25] Salek asserts that SunTrust breached the Deed of Trust and engaged in conversion of Salek's insurance proceeds by failing to disburse additional funds after the March 14 and 27, 2018, inspections respectively revealed that 92% and 95% of the repairs were completed.

SunTrust moves for summary judgment on Salek's remaining claims.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). Summary judgment on a claim or part of a claim is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 (5th Cir. 2011) (quoting FED. R. CIV. P. 56(a)).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). The moving party, however,

---

[25] Plaintiff's First Amended Complaint [Doc. # 14], ¶¶ 36-45.

"need not negate the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III. DISCUSSION

#### A. Breach of Contract

"The elements of a breach of contract action under Texas law are: '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Certain Underwriters at Lloyd's of London*

7

*v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Smith Int'l., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)). SunTrust challenges only whether a genuine dispute of fact exists with respect to the third element, *i.e.*, that it breached the Deed of Trust.

Salek contends SunTrust breached the terms of the Deed of Trust by failing to timely disburse her insurance proceeds after SunTrust's inspections on March 14 and 27, 2018, revealed that 92% and 95% of the total work was completed. Salek argues that under Paragraph 7, SunTrust must release proceeds *before* Salek was obligated to complete repairs. Salek further appears to argue that, under the Deed of Trust, SunTrust is obliged to make progressive disbursements of funds as repairs are completed.[26]

Salek's interpretation of the Deed of Trust is untenable. Paragraph 5 allows SunTrust to hold Salek's insurance proceeds "until [it] has had an opportunity to inspect such Property to ensure the work has been completed to [its] satisfaction,

---

[26] Salek also argues that SunTrust breached the terms of the Promissory Note by refusing to allow Salek to apply the insurance proceeds to her outstanding loan balance, in violation of the Promissory Note's right of prepayment. *See* Note ¶ 4. Salek did not include a claim for breach of contract based on the Promissory Note's prepayment clause in her operative pleadings. *See* Amended Complaint ¶¶ 36-45. This claim is not properly before the Court. *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

8

provided that such inspection shall be undertaken promptly."[27] Paragraphs 5 and 7 of the Deed of Trust state that SunTrust "*may* disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments *as the work is completed*."[28] Under Paragraph 7, Salek is "responsible for repairing or restoring the Property only if [SunTrust] has released proceeds for such purposes."[29] The Deed of Trust does not state that funds must be disbursed according to a schedule or that funds must be released when repairs have reached certain percentages of completion. A holistic reading of these provisions is that SunTrust was required to disburse some proceeds—but not all—to Salek before she was obliged to begin repairs. Once a portion of the proceeds were disbursed, Salek's duty to repair ripened and SunTrust had no obligation to disburse all the funds in advance of Salek's completion of other repairs or when the repairs reached a certain percentage of completion. Instead, SunTrust's only other contractual obligation was, assuming a prompt inspection, to release the funds once the "work ha[d] been completed to [SunTrust's] satisfaction."[30]

---

[27]     Deed of Trust ¶ 5.

[28]     *Id.* ¶¶ 5, 7 (emphasis added).

[29]     *Id.* ¶ 7.

[30]     *See id.* ¶ 5.

9

No genuine dispute exists over whether SunTrust complied with these terms. SunTrust disbursed $15,400.00 to Salek on November 28, 2017. After an inspection revealed that 50% of the necessary repairs were complete, SunTrust disbursed 50% of the remaining insurance proceeds, $56,861.25, to Salek on March 15, 2018. SunTrust's failure to disburse additional funds after until approximately two months the March 14 and 27, 2018, inspections, which disclosed that repairs were 92% and 95% complete, respectively, was not a violation of any provision of the Deed of Trust. Salek cites no summary judgment evidence demonstrating, and does not argue, that the repairs and restoration of her house by this time had "been completed to [SunTrust's] satisfaction."[31]

Because Salek fails to demonstrate the existence of a genuine factual dispute whether SunTrust breached the Deed of Trust, the Court grants summary judgment and dismisses Salek's breach of contract claim.

---

[31] Salek argues that SunTrust may not rely on the Insurance Claims Package to demonstrate its compliance with the Deed of Trust because the Insurance Claims Package is not a contract between the parties. Salek alternatively argues that even if the Insurance Claims Package binds the parties, SunTrust breached its terms. The Court agrees with Salek that the Insurance Claims Package is not a contract between the parties, and thus SunTrust's breach of the Insurance Claims Package, if it occurred, cannot give rise to a breach of contract claim.

## B. Conversion

Under Texas law, "[t]he elements of a conversion claim are (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property." *Stroud Prod., L.L.C. v. Hosford*, 405 S.W.3d 794, 811 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). "There can be no conversion where the owner has expressly or impliedly assented to the taking or disposition." *Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 39-40 (Tex. App.—Dallas 2003, pet. denied), *cited with approval in Ashmore v. JMS Constr., Inc.*, No. 05-15-00537-CV, 2016 WL 7217256, at *13 (Tex. App.—Dallas Dec. 13, 2016, no pet.). A party may be liable for conversion if it, without authorization, "wrongfully assumes and exercises dominion and control over another's property, to the exclusion of the true owner's rights, even though possession of the property may have originally been acquired by lawful means." *Bosworth v. Gulf Coast Dodge, Inc.*, 879 S.W.2d 152, 158 (Tex. App.—Houston [14th Dist.] 1994, no writ).

Salek has not presented evidence to create a genuine factual dispute over whether SunTrust "unlawfully and without authorization assumed and exercised

control over" Salek's insurance proceeds. *See Stroud Prod.*, 405 S.W.3d at 811. For the reasons stated above, the Deed of Trust authorized SunTrust to exercise control over and dispose of Salek's insurance proceeds in the manner SunTrust did. Because Salek "expressly . . . assented" under the Deed of Trust to SunTrust's disposition of her proceeds, Salek's conversion claim fails as a matter of law. *See Robinson*, 117 S.W.3d at 39-40; *Nazareth Int'l., Inc. v. J.C. Penney Co., Inc.*, No. Civ.A.3:04-CV-1265-M, 2005 WL 1520854, at *4 (N.D. Tex. Jan. 19, 2005) (dismissing conversion claim when the parties' contract authorized the defendant's challenged disposition of the relevant goods).

## IV. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the Deed of Trust authorized SunTrust's challenged disposition of Salek's insurance proceeds. It is therefore

**ORDERED** that the Defendant's Motion for Summary Judgment ("Motion") [Doc. # 35], is **GRANTED** and Plaintiff Lina Salek's claims are **DISMISSED with prejudice**.

A final judgment will separately issue.

SIGNED at Houston, Texas, this 17th day of **July, 2019.**

*[Signature: Nancy F. Atlas]*

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE